**LOMAR WHOLESALE GROCERY, INC., Plaintiff,**

v.

**DIETER'S GOURMET FOODS, INC., a California Corporation, Gourmet Foods, Inc., a Minnesota Corporation, and Art Stone, President of Gourmet Foods, Inc., Defendants.**

Civ. No. 79–401–E.

United States District Court, S.D. Iowa, C.D.

Dec. 27, 1985.

John P. Roehrick, Donald J. Polden, Ray Sullins, Des Moines, Iowa, for plaintiff.

John C. Cortesio, Jr., Des Moines, Iowa, Thomas J. Rooney, St. Paul, Minn., Sondra Colligan, Sherman Oaks, Cal., for defendants.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

The Court has before it defendants' motion for summary judgment on plaintiff's Robinson-Patman Act claims. On June 10, 1985, this Court filed an Order directing the plaintiff to file a report regarding its characterization of the relevant product market for its Section 2(a) claim. Plaintiff filed such a response and defendants filed a reply to plaintiff's response. A hearing addressing the Robinson-Patman Act issues was held before the undersigned in Des Moines, Iowa on October 30, 1985 and both parties have submitted post-argument letters to the Court which shall be filed as briefs and made part of the record here. The matter is fully submitted and defendants' motion for summary judgment is granted.

I. Competitive Injury Requirement.

■ In a primary line case, the competitive injury requirement of Section 2(a) can be satisfied by (1) actual evidence of injury to competition at the seller's level shown by market analysis or (2) by showing predatory intent from which the injury to competition can be inferred. *See ABA Antitrust Section, Antitrust Law Developments*, p. 231 (2d ed. 1984). Lomar argues that it can show both an attempt to monopolize and predatory pricing.

A. Market Analysis.

■ The Court recognizes that the legal principles to be applied when plaintiff is seeking to show actual competitive injury through market analysis are not a model of clarity. *International Air Industries, Inc. v. American Excelsior Co.*, 517 F.2d 714, 722 n. 14 (5th Cir.1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1411, 47 L.Ed.2d 349 (1976). With this in mind, the Court turns to plaintiff's theory. Plaintiff contends:

> Since the market for specialty foods is comprised of only two firms in the greater Iowa area, Gourmet Foods' systematic below-cost pricing on the key 180 items would have destroyed Lomar as a competitor and would have created a monopoly for Gourmet Foods.

Plaintiff's Response, p. 5, Docket No. 245. Plaintiff further contends that

> the Plaintiff need show only that the Defendant discriminated in price to its customers and that the discrimination on a particular product or products adversely affected competition by another seller (such as the Plaintiff) of that particular product or products; relevant product market analysis is unimportant except insofar as it permits consideration of whether the Plaintiff and Defendants were competitors and whether the products were of like grade a quality.

Plaintiff's Response, p. 7. Furthermore, Lomar asserts that defendants' predatory pricing injured it as a competitor of Gourmet Foods in the market for sales of the 180 items and also for the sale of specialty foods. *Id.* In its Order filed June 10, 1985, this Court held that "specialty food" was not a relevant product market. However, assuming that such a market did exist, plaintiff has still failed to come forward with evidence required to show competitive injury under the "market analysis" prong. In so holding, the Court relies on *D.E. Rogers Associates, Inc. v. Gardner-Denver Co.*, 718 F.2d 1431, 1439 (6th Cir.1983), and *International Air Industries, supra,* 517 F.2d at 722–23. As near as this Court can tell, Lomar's assertion that it was injured in its attempt to sell the 180 items is simply a way of saying that it lost business and profits which, in turn, shows that competition was injured. The diversion of business and the corresponding loss of profits is a natural consequence of honest and vigorous competition. *Id.* Thus, the Court holds that, despite ample opportunity, plaintiff has failed to come forward with evidence as required by Fed.R.Civ.P. 56(e)

to support its theory that it can show anti-competitive effect through market analysis. Consequently, defendants are entitled to summary judgment on this prong of plaintiff's competitive injury theory.

### B. Predatory Pricing.

The Court's Order filed June 10, 1985 did not address plaintiff's claim that it could show the requisite competitive injury by establishing predatory intent through predatory pricing. The Court now addresses that claim. Plaintiff claims that 180 items were sold in violation of the Robinson-Patman Act. Plaintiff argues that

> the statutory requirement that the Plaintiff demonstrates some actual or probable effect on competition may be satisfied by evidence that the defendant sold a product (or products) in the trade area shared by the Plaintiff and Defendant at a price or prices below cost; an effect on competition is inferred from the below cost pricing.

Plaintiff's Response, p. 3. Plaintiff has submitted a summary to the Court which it asserts shows that four of the five products listed were sold at prices below Gourmet Foods' out-of-pocket or variable costs.

■ *176 of 180 items.* Defendant argues that because plaintiff has presented no evidence of below average variable cost pricing on 176 of the 180 items, that there is no factual issue involving below average variable cost pricing of those 176 items and, thus, defendants are entitled to summary judgment as to those 176 items. The Court agrees and holds that the plaintiff has failed to come forward with evidence as required by Rule 56(e) which would create a triable issue of fact with regard to the 176 items.

■ *Macadamia nuts.* The Court holds that the plaintiff cannot rely on a typing transposition in an answer to an interrogatory to create an issue of fact with respect to below cost pricing of macadamia nuts. There is no *genuine* issue of fact with respect to the macadamia nuts claim and therefore defendants are entitled to sum-

mary judgment on it. *See* Defendants' Reply, pp. 6–8, Docket No. 248.

*Final three items.* With respect to the remaining three items, defendants assert that plaintiff's evidence of below average variable cost prices is based upon incorrect computations of variable cost. Specifically, defendants contend that costs in the categories of legal, administrative, warehouse, advertising and all but $2,200 of the insurance costs were erroneously considered as variable by the plaintiff. In addition, defendants assert that plaintiff erred as to the price per case for the three items. Defendants' position is set forth on pages 4 through 8 of their Memorandum filed December 11, 1984 (Docket No. 239).

First, defendants' contend that the price per case which Lomar used as the price at which Gourmet Foods sold the product was taken from a computer reporter prepared in 1983 and reflected 1983 prices. The relevant period for comparing cost to price is September 1, 1981, to October 31, 1982; thus, the 1983 prices are irrelevant in relation to the costs incurred during that period. The correct price information could have been obtained from the answers of defendants to Interrogatory 2a of Lomar's Third Set (Docket No. 227). The answers reflect that Gourmet Foods was charging prices higher than the figures used by the plaintiff in its summary.

Second, defendants contend plaintiff included items in its computation of variable cost which did not vary with the amount of sales made.

Plaintiff has been aware of these contentions for some time yet has made no attempt to counter them. Indeed, plaintiff's latest pleading stands pat on the summary and ignores the weaknesses which have been pointed out by the defendants. Plaintiff's Response, pp. 3–4.

■ Having reviewed the record, the Court holds that plaintiff has not created a genuine issue of material fact with regard to the predatory pricing claim because the record does not show nor support the inference that defendants' prices were below

average variable costs. In short, plaintiff's summary is not supported by the record. In addition, plaintiff has failed to present sufficient evidence which would allow a jury to find predatory intent based on defendants' conduct. *See Conoco, Inc. v. Inman Oil Co.,* 774 F.2d 895 (8th Cir.1985). Accordingly, defendants are entitled to summary judgment as to the predatory pricing claim.

### II. Robinson-Patman Act Section 2(c).

■ On page 4 of its Memorandum filed July 17, 1984 (Docket No. 224), Lomar states:

> Lomar has alleged that the Defendant Art Stone has violated Section 2(c) of the Act by engaging in unlawful brokerage arrangements through the use of food brokerage companies which were nothing but fronts for Art Stone and Gourmet Foods. With respect to this claim Lomar has recently propounded specific interrogatories designed to obtain certain information concerning the operation of Service Brokerage, Inc., and Sales & Marketing, Inc. When the Defendants have answered these interrogatories, Lomar will be prepared to respond more fully to Defendants' Motion for Summary Judgment as it pertains to this point.

Due to time constraints the Section 2(c) claim was not addressed at the November 9, 1984 hearing. However, in a letter dated November 30, 1984, plaintiff presented its argument to the Court. In that letter Lomar asserted that:

> Gourmet Foods and the brokerage firms held themselves out as being the same business entity. That is enough to establish a prima facie case of unlawful receipt of brokerage.

> \* \* \* \* \* \*

> The defendants in this case, however, argue that Lomar can point to no injury from the alleged brokerage arrangement. In Answers to Interrogatory 2(m) of Plaintiff's Fourth Set of Interrogatories, Gourmet Foods reports brokerage payments to Sales and Marketing of over $3,000 in 1981 from Mauna Loa Macada-

mia Nuts which are the same product that Gourmet Foods was selling below cost in Iowa. This clearly establishes at least one instance of demonstrable injury to Lomar from the brokerage arrangements.

Defendants' response to plaintiff's letter is set forth on pages 10–13 of their Memorandum filed December 11, 1984 (Docket No. 239), and asserts that plaintiff has been unable to show an injury and, thus, under 15 U.S.C. § 15(a), lacks standing to assert the Section 2(c) claim. *See Abernathy v. Bausch & Lomb, Inc.,* 97 F.R.D. 470, 475–77 (N.D.Tex.1983). As observed above, plaintiff's specific contention of injury with respect to the macadamia nuts is erroneous because the record clearly establishes that the sales were not below average variable cost. For this reason and other reasons set forth by defendants in their briefs and its recent response to plaintiff's letter of November 6, 1985, the Court concludes that Lomar has not established the requisite injury which would allow it to assert the Section 2(c) claim. Thus, the Court grants defendants summary judgment on this claim.

Since the Court in its Order of June 28, 1985 granted summary judgment on the plaintiff's Sherman Act claims, all of plaintiff's claims have now been disposed of.

IT IS THEREFORE ORDERED that the motion for summary judgment of Defendants Gourmet Foods, Inc. and Art Stone as to plaintiff's Robinson-Patman Act claims is hereby granted.

IT IS FURTHER HEREBY ORDERED that since all claims have been denied, this cause is dismissed at plaintiff's costs.

IT IS FURTHER HEREBY ORDERED that the letters to the Court submitted by counsel shall be filed with the Clerk of Court as supplemental briefs.